BRIAN TOMINA, Bar No. 255386
5900 Wilshire Blvd., Suite 2600
Los Angeles, CA 90036
Telephone: (248) 327-6556
Facsimile: (248) 436-3385
notifications@oliverlg.com
www.legalactionnow.com

Attorney for Plaintiff
Dino Bruce, and on Behalf
of All Others Similarly Situated,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| DINO BRUCE,<br>Individually and on Behalf of All<br>Others Similarly Situated,<br><br>Plaintiff,<br><br>   v.<br><br>PROSTAR, INC.;<br>ULTIMATE NUTRITION, INC.;<br>d/b/a ULTIMATE NUTRITION<br>PRODUCTS, INC,; and<br>DOE DEFENDANTS 1-250, inclusive,<br><br>Defendants. | Case No. 2:12-cv-07136-RGK-MANx<br>Hon: R. Gary Klausner<br>Mag. Judge: Margaret A. Nagle<br><br>**PLAINTIFF'S FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>1.VIOLATIONS OF <u>BUSINESS &<br>PROFESSIONS CODE</u> SECTION<br>17200 ET SEQ.<br><br>2. VIOLATIONS OF<br>CALIFORNIA <u>CIVIL CODE</u><br>SECTION 1750 ET SEQ.<br><br>3. VIOLATIONS OF THE FALSE<br>ADVERTISING LAW,<br>CALIFORNIA<br><u>BUSINESS & PROFESSIONS<br>CODE</u> SECTION 17500 ET SEQ.<br><br>4. FRAUD<br><br>5. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

NOW COMES Plaintiff DINO BRUCE, ("Plaintiff"), by and through his attorneys BRIAN TOMINA and OLIVER LAW GROUP, P.C., individually and on behalf of all others similarly situated, by their undersigned counsel, pursuant to Federal Rules of Civil Procedure Rule 15(a)(1)(A), allege the following:

### NATURE OF THE ACTION

1. This is a civil class action brought individually by Plaintiff and on behalf of a class of persons similarly situated, ("Class Members"), who purchased the dietary supplement Ultimate Nutrition Kre-Alkalyn® from Defendants ("Product").

2. The class members are all persons located within the state of California and the United States who purchased the Product.

3. Defendants Prostar, Inc., Ultimate Nutrition, Inc. and Ultimate Nutrition Products, Inc. (collectively "Ultimate"), advertises, manufactures, markets, sells and distributes the Product.

4. Vitacost.com is an online retailer of the Product.

5. The dietary supplement industry is a growing and extremely competitive business environment, especially the sports (bodybuilding) supplement segment.

6. Most companies in this segment distort, if not totally ignore, competent and reliable scientific data regarding their products and ingredients.

7. The Product is generally categorized as a creatine Kre-Alkalyn® product (buffered creatine), which falsely claims superior efficacy, reduced side effects, and results compared to creatine monohydrate, the leading and most scientifically supported form of creatine on the market.

8. Creatine products are a substantial segment of the sports (bodybuilding) supplement segment of the dietary supplement market.

9. Defendants make numerous false, fraudulent, misleading, and deceptive label claims regarding the Product.

10. Defendants use several false, fraudulent, misleading, unfair and deceptive claims at the point of purchase for the Product on their website www.ultimatenutrition.com. (See Exhibit A).

11. Defendants use several false, fraudulent, misleading, unfair and deceptive claims at the point of purchase for the Product on the website www.vitacost.com, among numerous other online retailers. (See Exhibit B).

12. Defendants provide the advertising and marketing language to be used for the Product to their retailers, such as Vitacost.

13. By Defendants' unfair, deceptive, fraudulent, unfair and misleading practices, Plaintiff and Class Members have been unfairly deceived into purchasing the Product.

14. Plaintiff brings this action challenging Defendants' claims relating to the Product on behalf of himself and all others similarly situated, under California's Unfair Competition Law, False Advertising Law, Consumer Legal Remedies Act, Fraud, and Unjust Enrichment.

15. Plaintiff seeks an order compelling Defendants to (1) cease marketing the Product using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Defendants have been unjustly enriched, and (4) destroy all misleading and deceptive materials.

1

## JURISDICTION AND VENUE

2     16. This Court has jurisdiction over all causes of action asserted herein.

3     17. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332(d), because there are at

4         least 100 Class Members in the proposed Class, the combined claims of proposed Class

5

6         Members exceed $5,000,000 exclusive of interest and costs, and at least one Class

7         Member is a citizen of a state other than Defendants' state of citizenship.

8     18. Plaintiffs will likely have evidentiary support after a reasonable opportunity for further

9         investigation or discovery regarding Defendants' sales of the Product during the class

10        period.

11    19. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events

12        giving rise to the claims asserted herein occurred in this District. Venue is proper

13

14        pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this

15        District, have sufficient minimum contacts with this District, and otherwise purposely

16        avail themselves of the markets in this District, through the promotion, sale, and

17        marketing of their Product in this District.

18    20. Defendants and other out-of-state participants can be brought before this Court pursuant

19        to state and federal law.

20

## THE PARTIES

21

22    21. During the Class period, Plaintiff and Class Members purchased the Product through

23        Defendant Ultimate's website and/or Vitacost.com's website and/or several different

24        brick/mortar or internet retailers. Plaintiff and Class Members suffered an injury in fact

25        caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this

26        Complaint.

27

28

22. Plaintiff is a resident of the County of Los Angeles, State of California, and the events set forth in this Complaint took place therein, who, on or about December 7, 2011, purchased the Product for his own use, and not for resale, from Vitacost.com's website www.vitacost.com.

23. Prostar, Inc. is licensed in the State of Connecticut, with a principal place of business address at 7 Corporate Ave., Farmington, CT 06032.

24. Ultimate Nutrition, Inc. is licensed in the State of Connecticut, with a principal place of business address at 7 Corporate Ave., Farmington, CT 06032.

25. Ultimate Nutrition Products, Inc. is a d/b/a of Prostar, Inc., with a principal place of business address at 7 Corporate Ave., Farmington, CT 06032.

26. Plaintiffs do not know the true names or capacities of the persons or entities sued herein as DOES 1 to 250, inclusive, and therefore sue such defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the DOE defendants is in some manner legally responsible for the damages suffered by Plaintiff and the members of the class as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## FACTUAL ALLEGATIONS

27. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

28. Plaintiff Bruce reviewed both Defendant Ultimate and Vitacost.com's websites prior to purchasing the Product through Vitacost.com's website.

29. Defendants provide retailers, such as Vitacost, marketing material for the sale and promotion of the Product.

30. Plaintiff Bruce reasonably relied on the information provided by Defendants when making the decision to purchase the Product.

31. Defendants' claims are not supported by competent and reliable scientific evidence.

32. Defendants' claims are false and misleading.

33. Defendants had access, but knowingly and/or recklessly ignored all competent and reliable scientific evidence regarding the Product and creatine monohydrate, the compound in which they continuously, and improperly, compare their Product to.

34. Defendants use the false, fraudulent, misleading, unfair and deceptive claim, "Kre-Alkalyn® is creatine which is 100% stable and will not break down into creatinine." (Exhibits A and B).

35. There is no competent and reliable data to support this claim.

36. Defendants make numerous and clear comparisons of the Product to creatine monohydrate throughout its advertising, marketing and labeling. (See Exhibits A and B).

37. The claim reference in pp. 34 is false and misleading because:

   (a) A number of studies have shown that creatine monohydrate is completely absorbed by the GI tract;

   (b) It has also been demonstrated that conversion of creatine monohydrate to creatinine in the GI tract is negligible with respect to transit duration, suggesting that arterial bioavailability of creatine monohydrate is approximately 100%; and

   (c) Additionally, there was no evidence, in a peer reviewed published study, that creatine monohydrate supplementation experienced a greater degradation to creatinine than the Product.

38. Defendants use the false, fraudulent, misleading, unfair and deceptive claims, "Explosive Results Smaller Servings" and "Kre-Alkalyn® allows athletes to use smaller serving sizes while experiencing even more explosive results." (Exhibits A and B).

39. There is no competent and reliable data to support these claims.

2:12-cv-07136-RGK-MANx

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

40. The claim reference in pp. 38 is false and misleading because it has been shown that neither Defendants' recommended dosage or equivalent doses of the Product promoted greater changes in muscle creatine content, body composition, strength, or anaerobic activity than creatine monohydrate.

41. Defendants use the false, fraudulent, misleading, unfair and deceptive claims, "Many athletes also report immediate results even with the elimination of the 'loading' phase normally occurring with regular creatine monohydrate" and "No more loading". (Exhibits A and B).

42. There is no competent and reliable data to support these claims.

43. The claims in pp. 41 are false, and misleading because there are competent and reliable scientific studies available that exhibit significant increases in muscle strength, mass, and performance when combining creatine monohydrate supplementation, **without a loading phase**, with 10-12 weeks of resistance training.

44. Defendants use the false, fraudulent, misleading, unfair and deceptive claim, "This stability allows the creatine to be absorbed more efficiently into the bloodstream." (Exhibits A and B).

45. There is no competent and reliable data to support this claim.

46. Again, Defendants' claim in pp. 44 is false and misleading because:

(a)     A number of studies have shown that creatine monohydrate is completely absorbed by the GI tract;

(b)     It has also been demonstrated that conversion of creatine monohydrate to creatinine in the GI tract is negligible with respect to transit duration, suggesting that arterial bioavailability of creatine monohydrate is approximately 100%; and

(c)     Additionally, there was no evidence, in a peer reviewed published study, that creatine monohydrate supplementation experienced a greater degradation to creatinine than the Product.

47. Defendants use the false, fraudulent, misleading, unfair and deceptive claim, "Best of all, a small serving is all that's needed to reach your muscle cells intact with full impact and no bloating." (Exhibits A and B).

48. There is no competent and reliable data to support this claim.

49. Defendants' claim in pp.47 is false because of creatine monohydrate's bioavailability, discussed above.

50. Defendants use the false, fraudulent, misleading, unfair and deceptive claim, "Kre-Alkalyn® has been referred to as a new form of creatine; **however, it is actually the best form of creatine (creatine monohydrate) that has been fully stabilized.**" (Exhibit A and B).

51. There is no competent and reliable data to support these claims.

52. Defendants claim in pp. 50 is false based upon the reasons previously stated as to the other false and misleading claims contained within this section.

53. In sum, Defendants' claims of superior bioavailability and reduced side effects relating to the Product are false and misleading, arbitrarily chosen to deceive consumers into purchasing an otherwise negligible or inferior product at marked up prices.

## RELIANCE AND INJURY

54. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

55. When purchasing the Product, Plaintiff was seeking a product that had the qualities described in Defendants' advertising, labeling and marketing.

56. Plaintiff read and relied on the deceptive claims contained herein.

57. Plaintiff believed the Product had the qualities he sought, but the Product was actually unsatisfactory to Plaintiff for the reasons described herein.

58. The Product costs more than similar creatine monohydrate products without misleading labeling, and would have cost less absent the false and misleading statements.

59. Plaintiff paid more for the Product, and would have been willing to pay less or unwilling to purchase the Product at all, absent the false and misleading labeling complained of herein. Plaintiff would not have purchased the Product absent these claims and advertisements.

60. For these reasons, the Product was worth less than what Plaintiff paid for it.

61. Instead of receiving a product that had actual and substantiated healthful or other beneficial qualities, the Product Plaintiff received was one that does not provide the claimed benefits.

62. Plaintiff lost money as a result of Defendants' deceptive claims and practices in that he did not receive what he paid for when purchasing the Product.

63. Plaintiff altered his position to his detriment and suffered damages in an amount equal to the amount he paid for the Product.

## CLASS ALLEGATIONS

64. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

65. Plaintiff brings this action on his own behalf and as a Class Action Pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the following Classes:

California Class: All Persons in the State of California who have spent money purchasing the Product from Defendants from four years from the first-filed complaint in this action until the final disposition of this and any and all related cases.

National Class: All Persons in the United States who have spent money purchasing the Product from Defendants from four years from the first-filed complaint in this action until the final disposition of this and any and all related cases.

66. The abundance of Class Members renders joinder of all Class members individually, in one action or otherwise, impractical.

67. This action involves questions of law and fact common to Plaintiff and Class Members including:

   (a) Whether Defendants violated the California Civil Code Section 1750 *et seq.*;

   (b) Whether Defendants violated the California Business & Professions Code Section 17200 *et seq.*;

   (c) Whether Defendants violated the False Advertising Law, Cal. Bus. & Prof. Code Section 17500 *et seq.*;

   (d) Whether Defendants' marketing materials were fraudulent;

   (e) Whether Defendants were unjustly enriched at the expense of the Class Members; and

   (f) Whether Plaintiff and Class Members sustained damages and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

Excluded from the Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants and its legal representatives, assigns and successors of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

68. *Numerosity*:   The Class is composed of thousands of persons geographically dispersed throughout the State of California and the United States, the joinder of whom in one action is impractical.   Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' records.

69. *Commonality*:   Questions of law and fact common to the Class exist as to all members

of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

(a) Whether Defendants violated the California Civil Code Section 1750 *et seq.*;

(b) Whether Defendants violated the California Business & Professions Code Section 17200 *et seq.*;

(c) Whether Defendants violated the False Advertising Law, Cal. Bus. & Prof. Code Section 17500 *et seq.*;

(d) Whether Defendants' marketing materials were fraudulent; and

(e) Whether Plaintiff and Class Members sustained damages and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

70. *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in manufacturing, marketing, advertising, warranting and selling the Product, Defendants' conduct in concealing material facts regarding the Product, Defendants' false, fraudulent, unfair and misleading claims and Plaintiff's and Class Members' purchasing the Product.

71. *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving false and misleading advertising, product liability and product design defects.

72. *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over

questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.   Should individual Class Members be required to bring separate actions, this Court and Courts throughout California would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.   In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## CHOICE OF LAW

### California's Substantive Law Applies
### to the Nationwide Class Members

73. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

74. California's substantive laws apply to the proposed nationwide Class, as set forth in this complaint, because Plaintiff properly brings this action in this District.   A United States District Court sitting in diversity presumptively applies the substantive law of the State in which it sits.

75. The Court may constitutionally apply California's substantive laws to Plaintiff and Nationwide Class Members' claims under the Due Process Clause of the Fourteenth Amendment, § 1, and the Full Faith and Credit Clause, Art. IV, § 1, of the United States Constitution.   The claims asserted by Plaintiff contain significant contact, or significant aggregation of contacts, to ensure an adequate state interest and supports the choice of California state law as just and reasonable.

76. Defendants' conduct substantial business in California providing California with an interest in regulating Defendants' conduct under California laws.  Defendants' decision to regularly conduct business in California and avail itself of California's laws render the application of California law to the claims at hand constitutionally permissible.

77. The injury to the Plaintiff and a significant number of proposed Class Members by virtue of the misconduct alleged, occurred in California.  Plaintiff Bruce resides in California and purchased Defendants' Product in California.  A substantial number of the proposed Nationwide Class reside in California and purchased Defendants' Product in California.

78. The application of California's laws to the proposed Nationwide Class Members is also appropriate under California's choice of law rules because California has significant contacts to the claims of the Plaintiff and the Nationwide Class Members.

## CAUSES OF ACTION

### COUNT I

### Violation of California Business and Professions
### Code § 17200 *et seq.*

### (On Behalf of Plaintiff and the Class Against Defendants)

79. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

80. Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

81. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute "unlawful" business acts and practices in that Defendants' conduct violates the False Advertising Law and the Consumer Legal Remedies Act.

82. Defendants' conduct is further "unlawful" because it violates the Federal Food, Drug, and Cosmetic Act and its implementing regulations in at least the following ways:

2:12-cv-07136-RGK-MANx

(1) Defendants' deceptive statements violate 21 U.S.C. § 343(a), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular";

(2) Defendants' deceptive statements violate 21 C.F.R. § 101.14(b)(3(i), which mandates "substances" in dietary supplements consumed must contribute and retain "nutritional value" as defined under 21 C.F.R. § 101.14(a)(2)(3) when consumed at levels necessary to justify a claim.

83. Defendants' conduct is further "unlawful" because it violates The California Sherman Food, Drug, and Cosmetic Law, which incorporates the provisions of the Federal Food, Drug and Cosmetic Act.

84. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein also constitute "unfair" business acts and practices under the UCL in that Defendants' conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

85. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein also constitute "fraudulent" business acts and practices under the UCL in that Defendants' claims are false, misleading, and have a tendency to deceive the Class and the general public.

86. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

87. Plaintiff further seeks an order for the disgorgement and restitution of all monies from the sale of the Defendants' Product, which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

## COUNT II

### Violation of California Legal Remedies Act

### Cal. Civ. Code § 1750 *et seq.*

### (On Behalf of Plaintiff and the Class Against Defendants)

88. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

89. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

90. This cause of action is brought on behalf of all people of the State of California in accordance with the provisions of the California Legal Remedies Act (California Civil Code section 1770). Class members have lost money or property as a result of Defendants' actions as set forth herein.

91. Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct of violation of the California Legal Remedies Act since Defendants are still representing that the product has characteristics and abilities which are false and misleading.

92. Defendants' wrongful business practices have caused injury to Plaintiffs and the Class.

93. Pursuant to section 1770 of the California Civil Code, Plaintiff and the Class seek an order of this Court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in this complaint.

94. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

95. Plaintiff and the Class also seek Punitive Damages since Defendants were put on notice of its violations of the California Legal Remedies Act and took no remedial actions.

2:12-cv-07136-RGK-MANx

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

15

## COUNT III

### Violation of the False Advertising Law, Business and Professions

### Code Sections 17500 *et seq.*

#### (On Behalf of Plaintiff and the Class Against Defendants)

96. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

97. In violation of Cal. Bus. & Prof. Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Product.

98. Defendants knew and reasonably should have known that the advertising, marketing and labeling of the Product were untrue and/or misleading.

99. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

### Count IV

### Fraud

#### (On Behalf of the Plaintiff and National Class Against Defendants)

100.   Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

101.   Defendants misrepresented the efficacy and results associated with the use of the Product through advertising and labeling.

102.   Defendants' statements about the Product are false, misleading, unfair and deceptive.

103.   Defendants market and design advertisements targeted at the Plaintiff and Class members. Defendants intended Plaintiff and Class Members to rely on its representation of the Product.

104.     Defendants knew that the representations set forth herein were false when such

representations were made and/or made the representations recklessly and without regard

for the truth.

105.     Plaintiff and Class Members reasonably relied upon Defendants' false

representations in purchasing the Product.

106.     Defendants' misleading and fraudulent conduct was knowing, deliberate, wanton,

willful, oppressive and undertaken in conscious disregard of, and with reckless

indifference to, Plaintiffs and Class Members' interest, and otherwise of the character

warranting the imposition of punitive damages.

107.     Plaintiff and Class Members suffered real economic losses and harm as a result of

Defendants' intentional misrepresentations and active concealment, as set forth

specifically herein.

108.     Plaintiff and the Class Members' reliance on Defendants' representations were a

substantial factor in causing the harm to Plaintiff and Class Members.

109.     Defendants' wrongfully obtained money from the Plaintiff and the Class

Members as a result of their fraudulent conduct.

**COUNT V**
**Unjust Enrichment**

**(On Behalf of Plaintiff and the Class Against Defendants)**

110.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

111.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the

Product.

112.     Defendants have been unjustly enriched in retaining the revenues derived from

Plaintiff's and Class Members' purchase of the Product.  Retention of those monies under

these circumstances is unjust and inequitable because Defendants misrepresented the Product's efficacy and safety, which caused injuries to Plaintiff and Class Members because they would have not purchased the Product if the true facts would have been known.

113.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff and the Class Members demand judgment in their favor against the Defendants, individually, jointly and severally, as follows:

a.  A determination that this action proceed as a class action and Plaintiff adequately represents the Class;

b.  An Order requiring Defendants to bear the cost of class notice;

c.  For compensatory, consequential and special damages in amounts proved, as well as statutory damages, including a return of all amounts paid for the Products sold by the Defendants to the Plaintiff and the Class Members;

d.  For interest thereon, in the maximum amount allowable under applicable law;

e.  For delay damages thereon, in the maximum amount allowable under applicable law;

f.  For costs of suit, in the maximum amount allowable under applicable law;

g.  For punitive damages, to the maximum amount permitted under applicable law;

h.  For an award of attorneys' fees and costs, to the maximum amount permitted under applicable law;

i.  For injunctive relief, restraining and enjoining the Defendants from continuing to use these deceptive sales tactics;

j.  For restitution of the funds which were unjustly enriched by Defendants, at the expense of Plaintiff and Class Members; and

k.  For such other and further relief for the Plaintiffs as this Honorable Court shall deem just.

DATED: November 01, 2012

By:   /s/ Brian Tomina_____
      BRIAN TOMINA (Bar No. 255386)
      5900 Wilshire Blvd., Suite 2600
      Los Angeles, CA 90036
      Telephone: (248) 327-6556
      Facsimile: (248) 436-3385
      notifications@oliverlg.com
      www.legalactionnow.com

      NICK SUCIU III, (P72052)
      OLIVER LAW GROUP, P.C.
      950 W. University Drive, Ste. 200
      Rochester, MI 48307
      Telephone: (248) 327-6556
      Facsimile: (248) 436-3385
      notifications@oliverlg.com
      www.legalactionnow.com

      Attorneys for Plaintiff
      Dino Bruce, and on Behalf
      of All Others Similarly Situated

# DEMAND FOR JURY TRIAL

Plaintiff and the Class Members demand trial by jury as to all matters and issues triable.


DATED: November 01, 2012


                              By:    /s/ Brian Tomina
                                     BRIAN TOMINA (Bar No. 255386)
                                     5900 Wilshire Blvd., Suite 2600
                                     Los Angeles, CA 90036
                                     Telephone: (248) 327-6556
                                     Facsimile: (248) 436-3385
                                     notifications@oliverlg.com
                                     www.legalactionnow.com



                                     NICK SUCIU III, (P72052)
                                     OLIVER LAW GROUP, P.C.
                                     950 W. University Drive, Ste. 200
                                     Rochester, MI 48307
                                     Telephone: (248) 327-6556
                                     Facsimile: (248) 436-3385
                                     notifications@oliverlg.com
                                     www.legalactionnow.com


                                     Attorneys for Plaintiff
                                     Dino Bruce, and on Behalf
                                     of All Others Similarly Situated

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 01, 2012, I sent the forgoing Plaintiff's First Amended Complaint to the Clerk of the Court by way of United States Postal Service first class mail. I hereby certify that I have sent by electronic mail the above papers to the following non-ECF participants:

Edward J. Heath

eheath@rc.com

DATED: November 01, 2012

By:  /s/ Brian Tomina_____
     BRIAN TOMINA (Bar No. 255386)
     5900 Wilshire Blvd., Suite 2600
     Los Angeles, CA 90036
     Telephone: (248) 327-6556
     Facsimile: (248) 436-3385
     notifications@oliverlg.com
     www.legalactionnow.com


     NICK SUCIU III, (P72052)
     OLIVER LAW GROUP, P.C.
     950 W. University Drive, Ste. 200
     Rochester, MI 48307
     Telephone: (248) 327-6556
     Facsimile: (248) 436-3385
     notifications@oliverlg.com
     www.legalactionnow.com


     Attorneys for Plaintiff
     Dino Bruce, and on Behalf
     of All Others Similarly Situated

2:12-cv-07136-RGK-MANx

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

# EXHIBIT A



SHOP ONLINE   Testimonials   Products   Dealer Info   About Us   International   FAQ   Contact Us   Home
FULL COMBAT   ULTIMATE GEAR

October 21, 2011

PRODUCT SEARCH





**NEW PRODUCTS**

Flavored BCAA 12,000

Available in 6 Great Tasting Flavors

Click Here For More Info...

**HOT PRODUCTS**

Amino Softgels

Aminos in an easy to swallow softgel.

Click Here For More Info...

R-ALA

R-ALA serves many functions in the body; including that of an antioxidant, booster of glutathione levels, improver of mitochondrial function, and as a chelating agent.

Click Here For More Info...

**STORE LOCATOR**

Select Region

Enter Zip Code

**NEWSLETTER SIGN-UP**

**FREE NEWSLETTER!**

Click here to sign up today for your free Ultimate Nutrition newsletter.

| | Supplemental/Nutritional Facts |
|---|---|
| 30 count Capsules (750mg.) | Download PDF File |
| 120 count Capsules (750mg.) | Download PDF File |

Creatine monohydrate has been proven to enhance strength, endurance, and athletic performance. Some athletes, however, have noted side effects including nausea, stomach cramps, bloating, and a host of other unwanted reactions. What wasn't realized until recently is that these side effects are actually caused by creatinine and not creatine.

Kre-Alkalyn® is creatine which is 100% stable and will not break down into creatinine. This stability allows the creatine to be absorbed more efficiently into the bloodstream. Kre-Alkalyn® allows athletes to use smaller serving sizes while experiencing even more explosive results.

Kre-Alkalyn® has been referred to as a new form of creatine; however, it is actually the best form of creatine (creatine monohydrate) that has been fully stabilized. It is a new technology altogether: 100% stable creatine. Kre-Alkalyn® is processed at a higher pH level than regular creatine monohydrate.

On June 4, 2002, Kre-Alkalyn® was awarded official U.S. Patent #6,399,661. The patent discusses an oral creatine supplement and the method of manufacturing this supplement, which includes mixing an alkaline powder with a powdered creatine until the pH of the mixture is in the range between 7-14. The research behind Kre-Alkalyn®'s patent shows that creatine's speed of conversion to creatinine is directly related to the pH of the liquid used for mixing. The lower the pH, the faster it converts. Conversion of creatine into the waste product creatinine can be halted by pH level alteration during the manufacturing process.

Preliminary feedback for Kre-Alkalyn® has been positive. Many athletes report a decrease in water retention and the elimination of bloating. Many athletes also report immediate results even with the elimination of the "loading" phase normally occurring with regular creatine monohydrate.

What will pH-correct creatine actually mean to you? No more nasty side effects. No more loading. No more cycling. No more sugar or dextrose transport systems. Best of all, a small serving is all that's needed to reach your muscle cells intact with full impact and no bloating.

Kre-Alkalyn® is a registered trademark of BioCeutical Research & Development Laboratory (BR&D). Kre-Alkalyn® is patented (6,399,661) and registered to BioCeutical Research & Development Laboratory (BR&D).

These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

Farmington, CT 06034-0643 USA
Phone: (860) 409-7100 ext. 106

Copyright 2011, Ultimate Nutrition, All Rights Reserved
Terms of Use | Privacy Policy

# EXHIBIT B



Shop by Brand ¦ Free Samples ¦ NEW! Refer a Friend ¦ **FREE SHIPPING** Orders Over $49!*        Translate this page

Call Us: 1-800-381-0759
Email Us ¦ Live Chat ¦ International Orders

Hello. Log in. New customer? Start here.
My Account ¦ Track My Order ¦ My List ¦ **My AutoShip!** ¦ Help

Shop All Departments ⌄        Search   Enter keyword or item number

ORDER BY 4 PM EASTERN OR PACIFIC TIME. WE'LL SHIP THE SAME DAY.

Bodybuilding - Sports Nutrition    Bodybuilding    Creatine    Creatine Monohydrate

Print



Refer a Friend
Share & Save

$10 / $10



**Ultimate Nutrition Kre-Alkalyn® -- 750 mg - 120 Capsules**

Item #: ULN 1000620
SKU #: 099071000620
Count: 120 Capsules
Weight: 0.33 lb
Serving: 2 Capsules
Servings: 60
Potency: 750 mg

**You save: $12.02**
**46% off**
Retail price: $25.95
**Sale price: $13.93**

Quantity:  1

Availability:
In stock

ADD TO CART

Add to My List
Set-up AutoShip

Shopping with us is safe.
Guaranteed.

Size:
120 Capsules

Supplement Facts

Like ¦ Sign Up to see what your friends like.        Recommend this on Google

★★★★★  Be the first to write a review   Share this Product:

**Compare & Save: Best Quality & Best Value**

**Vitacost Kre-Alkalyn® Advanced Creatine -- 1,500 mg per serving -- 240 Capsules**
**Value price: $24.99**
                                                          Rating: ★★★★★

In stock

**Frequently Bought Together:**
Buy this item with **Vitacost BCAAs L-Leucine, L-Valine, L-Isoleucine -- 2,400 mg per serving - 300 Capsules**

 + 

**26% off**
Retail price together: $44.54
Value price together: $32.52
BUY BOTH PRODUCTS
In stock

**Customers who have bought this product have also bought:**
Dymatize Creatine Micronized -- 500 Grams
Optimum Nutrition Amino Chewables Wild Berry -- 100 Pieces
Vitacost BCAAs L-Leucine, L-Valine, L-Isoleucine -- 2,400 mg per serving - 300 Capsules
Show more products that customers bought

PRODUCT DETAILS    PRODUCT REVIEWS    EMAIL TO A FRIEND

**Ultimate Nutrition Kre-Alkalyn® Description**

**EXPLOSIVE RESULTS ~ SMALLER SERVING**

**Kre-Alkalyn® has the benefits of regular Creatine, without the associated side effects some users experience with Creatine Monohydrate**

Creatine monohydrate has been proven through decades of research to enhance strength, endurance, and athletic performance. Some athletes, however, have noted side effects including nausea, stomach cramps, bloating, and a host of other unwanted reactions. What wasn't realized until recently is that these side effects are actually caused by creatinine and not creatine. Kre-Alkalyn® is creatine which is 100% stable and will not break down into creatinine. This stability allows the creatine to be absorbed more efficiently into the bloodstream. Kre-Alkalyn® allows athletes to use smaller serving sizes while experiencing even more explosive results.

Kre-Alkalyn® has been referred to as a new form of creatine; however, it is actually the best form of creatine (creatine monohydrate) that has been fully stabilized. It is a new technology altogether: 100% stable creatine. Kre-Alkalyn® is processed at a higher pH level than regular creatine monohydrate.

On June 4, 2002, Kre-Alkalyn® was awarded official U.S. Patent #6,399,661. The patent discusses an oral creatine supplement and the method of manufacturing this supplement, which includes mixing an alkaline powder with a powdered creatine until the pH of the mixture is in the range between 7-14. The research behind Kre-Alkalyn®'s patent shows that creatine's speed of conversion to creatinine is directly related to the pH of the liquid used for mixing. The lower the pH, the faster it converts. Conversion of ceatine into the waste product creatinine can be halted by pH level alteration during the manufacturing process.

Kre-Alkalyn® has a pH above 12 because its molecules are synthesized with "buffering" agents using a patented manufacturing process. As a result, it remains completely stable and reaches muscle cells at full strength. This helps the body absorb more creatine, thereby lowering the serving size required for beneficial results.

Preliminary feedback for Kre-Alkalyn® has been positive. Many athletes report a decrease in water retention and the elimination of bloating. Many athletes also report immediate results even with the elimination of the "loading" phase normally occurring with regular creatine monohydrate. Research has shown a dramatic increase in creatine phosphate concentration when supplementing with 1.5g of Kre-Alkalyn® daily for 2 or more days.

Kre-Alkalyn® also buffers lactic acid. Accumulation of metabolic acid (H+) is recognized as a rate-limiting factor in exercise. Kre-Alkalyn®'s patented buffer system immediately neutralizes the acid in the stomach, protecting the buffered creatine from creatinine conversion. The acidity is reduced, and Kre-Alkalyn® is ready for absorption. After entering the small intestine, bicarbonate ions are secreted to further alkalinize the Kre-Alkalyn® for absorption into the blood stream. Kre-Alkalyn®'s buffering effect assists in sparing the body's natural bicarbonate stores, prolonging muscular performance and delaying the onset of fatigue.

What will pH-correct creatine actually mean to you? No more nasty side effects. No more loading. No more cycling. No more sugar or dextrose transport systems. Best of all, a small serving is all that's needed to reach your muscle cells intact with full impact and no bloating.

## Supplement Facts
Serving Size: 2 Capsules
Servings per Container: 60

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Kre-Alkalyn® (Buffered Creatine) | 1.5 g | * |

*Other Ingredients:* Gelatin, microcrystalline cellulose, and magnesium stearate.

*Kre-Alkalyn® is a registered trademark of BioCeutical Research & Development Laboratory (BR&D)*

*Kre-Alkalyn® is patented (6,399,661) & registered to BioCuetical Research & Development Laboratory ®BR&D).*

**Ultimate Nutrition Kre-Alkalyn® Directions**

**Suggested Use:** Take 1 to 2 capsules once in the morning and once prior to exercise.

**Disclaimer**

These statements have not been evaluated by the FDA. These products are not intended to diagnose, treat, cure, or prevent any disease.

1-800-381-0769

**My Account**
Account Login
Order History
My List
My AutoShip!

**Customer Service**
Help
Domestic Shipping
International Shipping
Live Chat
Request a Product
AutoShip!

**Ways To Shop**
New Products
Shop by Brand
Shop by Category
Today's Deals of the Day
Coupons & Discounts

**Community**
Join the Community
Discussion Board
Progress Blogs
The Community
Recommends
Recent Community
Reviews
Sweepstakes Winners

**Follow Us**
Get Connected
Facebook
Google+
Twitter
Mobile
Vitablog
RSS Feeds

**Company Information**
About Vitacost
Vitacost Brand Products
Quality Guarantee
The Vitacost Store
Careers at Vitacost
Investor Relations
Privacy Policy
Terms of Use
Terms and Conditions of Sale
Site Map


McAfee SECURE
TESTED DAILY   07-DEC

Copyright © 2011 Vitacost.com. All rights reserved • Designated trademarks and brands are the property of their respective owners.

The products and the claims made about specific products on or through this site have not been evaluated by Vitacost.com or the United States Food and Drug Administration and are not approved to diagnose, treat, cure or prevent disease. The information provided on this site is for informational purposes only and is not intended as a substitute for advice from your physician or other health care professional or any information contained on or in any product label or packaging. You should not use the information on this site for diagnosis or treatment of any health problem or for prescription of any medication or other treatment. You should consult with a healthcare professional before starting any diet, exercise or supplementation program, before taking any medication, or if you have or suspect you might have a health problem.
Not responsible for typographical errors or misprints. Product availability, pricing, and promotions are subject to change without notice.

ATL1